AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
MAY 09 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One (1) iPhone 6s Plus; Model: A1687; FCC ID: BCG-E2944A; IC: 579C-E2944A IMEI: 353334070799214

Case No. '17MJ1405

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 952,960 | Importation of Methamphetamine |

The application is based on these facts:

See attached affidavit of HSI Special Agent Patrick Cunningham, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ___________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Patrick Cunningham, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/9/17

*Judge's signature*

City and state: San Diego, CA

Hon. William V. Gallo, Magistrate Judge
*Printed name and title*

# ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The property to be searched is described as:

**One (1) iPhone 6s Plus**
Model: A1687
FCC ID: BCG-E2944A
IC: 579C-E2944A
IMEI: 353334070799214

(Target Telephone 1). Currently in the possession of the Homeland Security Investigations located at 2255 Niels Bohr Court, San Diego, California 92154.





# ATTACHMENT B-1

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of January 1, 2017 to March 17, 2017:

a. tending to identify attempts to import methamphetamine or other controlled substances from the United States to Mexico and to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from the United States to Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from the United States to Mexico;

d. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from the United States to Mexico, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952 and 960.**

CMR

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN THE MATTER OF THE SEARCH OF

**One (1) iPhone 6s Plus**
Model: A1687
FCC ID: BCG-E2944A
IC: 579C-E2944A
IMEI: 353334070799214

**One (1) iPhone 7 Plus**
Model: A1661
FCC ID: BCG-E3087A
IC: 579C-E3087A
IMEI: 355376083304597

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Patrick Cunningham, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search the following:

   a. One (1) iPhone 6s Plus, Model: A1687, FCC ID: BCG-E2944A IC: 579C-E2944A, IMEI: 353334070799214, (Target Telephone 1); and

   b. One (1) iPhone 7 Plus, Model: A1661, FCC ID: BCG-E3087A, IC: 579C-E3087A, IMEI: 355376083304597 (Target Telephone 2), hereinafter **Target Telephones**.

2. Agents seized **Target Telephones** on March 17, 2017, from Wilfredo AVELAR at the time he was arrested at the Otay Mesa Port of Entry, San Diego, California, for the importation of approximately 14.72 kilograms (32.38 pounds) of

cocaine and 3.08 kilograms (6.78 pounds) of methamphetamine, in violation of Title 21, United States Code, Sections 952, 960. At the time of his arrest, AVELAR was the registered owner, driver, and sole occupant of a Cadillac CTS bearing California license plate 6FAC676. **Target Telephones** are currently in the possession of the Homeland Security Investigations located at 2255 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of **Target Telephones** will produce evidence of the aforementioned crimes, as described in Attachment B-1 and B-2.

## EXPERIENCE AND TRAINING

4. I am a Special Agent (SA) of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) and an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

5. I have been employed as a Special Agent with HSI since July 2008 and I am currently assigned to the HSI office in San Ysidro, California. I am a graduate of the Criminal Investigator Course and Immigration and Customs Enforcement, Special Agent Training Program at the Federal Law Enforcement Training Center. I have a Bachelor's Degree from Northeastern University in Boston, Massachusetts. I have received training in identifying various controlled substances and the conduct of controlled substances (Title 21) investigations. I have spoken with other agents with extensive experience in controlled substances investigations. I am assigned to conduct investigations of criminal violations relating to the smuggling and transportation of controlled substances. I have received training in narcotics and financial investigations. I have interviewed and operated informants, executed search warrants, arrested and interviewed subjects, conducted physical surveillance, and utilized electronic and video surveillance. I have also worked with and consulted with numerous agents and law enforcement officers who have

investigated drug trafficking cases. I participated in numerous debriefings of informants who had personal knowledge regarding narcotics trafficking. I am familiar with narcotics traffickers, including the distribution, storage, and transportation of narcotics, and the collection of drug proceeds. Further, I am aware that drug traffickers often communicate with their criminal associates using telephones and cellular telephones. I am aware that drug traffickers often change their telephones or telephone numbers in order to avoid detection by law enforcement. Based on review of previously intercepted wire and electronic communications, interviews with defendants that I have arrested, and conversations with other law enforcement officers, I am aware that persons discussing criminal matters over the phone often speak vaguely or in code and I am aware of some common codes or methods of coding. This training and experience forms the basis for the opinions expressed below.

6. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and

posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel, who are experienced in the area of narcotics investigations, and they share the same opinions as stated below. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search cellular telephones that are believed to contain evidence of violations of 21 U.S.C. §§ 952, 960.

8. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## FACTS SUPPORTING PROBABLE CAUSE

9. On March 17, 2017, AVELAR attempted to enter the United States from Mexico through the Otay Mesa, California, Port of Entry as the registered owner, driver, and sole occupant of a Cadillac CTS, bearing California license plate 6FAC676.

10. When AVELAR entered through the primary inspection vehicle lane, he presented a valid United States passport as identification. The Customs and Border Protection (CBP) Officer assigned to the primary vehicle lane obtained two negative customs declarations from AVELAR, who stated that he was traveling home to Victorville,

California. Database checks yielded a computer-generated alert for further inspections to be conducted on AVELAR at the border. AVELAR was subsequently referred to the secondary lot for further inspection.

11. At secondary inspection, a Narcotics and Human Detector Dog alerted to the rear driver's side wheel-well of the vehicle. After further inspection of the vehicle, a CBPO discovered a compartment located within the rear driver's wheel-well of the vehicle that contained eighteen (18) packages. Thirteen of the packages, which weighed approximately 14.72 kilograms (32.28 pounds), contained a substance that field-tested positive for properties of cocaine. Five of the packages, which weighed 3.08 kilograms (6.78 pounds), contained crystalline substance that field-tested positive for properties of methamphetamine. Further, a CBPO conducted a pat down of AVELAR for officer safety and located a cellophane-wrapped package in AVELAR's waistband. The package weighed approximately 9.5 grams and the contents inside field-tested positive for properties of cocaine.

12. AVELAR was arrested and officers seized the **Target Telephones** from AVELAR. Based upon my experience investigating narcotics smugglers and the particular investigation in this case, I believe that AVELAR likely used **Target Telephones** to coordinate the importation of methamphetamine into the United States.[1]

13. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that **Target Telephones** contain evidence of violations of 21 U.S.C. §§ 952 and 960, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Whatsapp or Facebook) photographs, audio files, videos, or location

---

[1] While documenting biographical information, I asked AVELAR to provide the phone number and passcode to **Target Telephone 1**. AVELAR provided the phone number: 760-217-3182 and passcode: 666666. AVELAR then consented to search his phone. However, after I advised AVELAR of his *Miranda* rights, AVELAR withdrew his consent. I plan to use passcode 666666 to search **Target Telephone 1**. AVELAR was not asked to provide information related to **Target Telephone 2**.

data:

a. tending to identify attempts to import methamphetamine or other controlled substances from the United States to Mexico and to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from the United States to Mexico;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from the United States to Mexico;

d. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from the United States to Mexico, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

14. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

15. Based upon my experience and investigation in this case, I believe that AVELAR is involved in narcotics smuggling activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe

that information relevant to the narcotics smuggling activities of AVELAR, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Telephones**.

16. Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Based on records checks, from January 12, 2017 to March 17, 2017, AVELAR used this specific vehicle to cross into Mexico on approximately 23 occasions. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as AVELAR will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search **Target Telephones** for data beginning on January 1, 2017, up to and including March 17, 2017.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that **Target Telephones** were used to facilitate the offense of importation of controlled substances. **Target Telephones** were likely used to facilitate the offense by transmitting

and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960.

21. Because **Target Telephones** were seized, there is also probable cause to believe that evidence of the illegal activities committed by AVELAR, as described in Attachments B-1 and B-2, continue to exist on **Target Telephones**.

22. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize items listed in Attachment B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Patrick Cunningham
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 9 day of May, 2017.

HONORABLE WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE